# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Chief Judge Marcia S. Krieger

Civil Action No. 18-cv-00072-MSK

**AMADEUS HARLAN,**

    **Applicant,**

**v.**

**WARDEN SCOTT DAUFFENBACH, and**
**THE ATTORNEY GENERAL OF THE STATE OF COLORADO,**

    **Respondents.**

---

### OPINION AND ORDER DENYING APPLICATION FOR
### WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

---

    This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 1, filed *pro se* by Applicant Amadeus J. Harlan. The Application challenges the validity of Applicant's criminal conviction in Case No. 2008CR1681 in the Jefferson County District Court in Golden, Colorado. After reviewing the Application, the June 11, 2018 Answer, the September 18, 2018 Reply, the December 24, 2018 Addendum, and the state court record, the Court FINDS and CONCLUDES that the Application should be denied and the case dismissed with prejudice.

    The Court has determined that the Application can be resolved on the parties' briefing and that an evidentiary hearing is not necessary. Applicant's Request for an Evidentiary Hearing, ECF No. 30, therefore, will be denied. Furthermore, under Rule 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts only when an evidentiary hearing is warranted is a judge required to appoint an attorney to represent a petitioner who

1

qualifies to have counsel appointed under 18 U.S.C. § 3006A." Without a need for a hearing, Applicant's motions for appointment of counsel, ECF Nos. 29 and 33, will be denied as moot. *Swazo v. Wyo. Dep't of Corr. State Penitentiary Warden*, 23 F.3d 332, 333 (10th Cir. 1994) (Decisions regarding appointment of counsel in habeas corpus proceedings generally are "left to the court's discretion.").

## I. BACKGROUND

The Court first revisits the factual background set forth in the Colorado Court of Appeals (CCA) August 4, 2016 Opinion, which affirmed Applicant's conviction and sentence.

In the summer of 2007, defendant met R.S. when he and R.S. worked in the same office building. When they met, defendant claimed to be a former Denver Broncos player and told R.S. that he was starting his own company. He told R.S. that he wanted her to work for him, so R.S. filled out a job application and gave defendant a photocopy of her driver's license.

According to R.S., she and defendant also flirted and, occasionally, hugged and kissed. Although R.S. denied being in an "intimate relationship" "in the traditional sense," she did admit that, on one occasion, she had had sex with defendant in a car parked in a parking garage.

Later, in fall 2007, defendant went to Empire Lakewood Nissan (the Nissan dealership) to purchase a Nissan Maxima. There, defendant told an employee that he was a former Denver Broncos player, showed a tattoo of a Super Bowl emblem on his arm, and said that he wanted to buy the Maxima for a girlfriend. Defendant paid for the car with a check.

Within a short time, however, defendant's check bounced. At that point, the Nissan dealership's finance director contacted defendant to figure out how he wanted to pay for the Maxima. Defendant told the finance director that he would finance the vehicle in his girlfriend's name; that way, when he paid the loan balance in cash (once funds became available), the Maxima would be in his girlfriend's name.

To complete the loan transaction, defendant had a Nissan dealership employee follow him to R.S.'s office building. When they arrived, defendant introduced the employee to a woman. After the introduction, the employee told the woman that he had some documents that she needed to sign, but he did not tell her that the paperwork was for purposes of financing a car. Defendant then said

that he wanted to speak with the woman alone, so he took the paperwork from the employee, and he and the woman walked to the back of the office space.

When the two returned, defendant gave the Nissan dealership employee the signed loan documents.

In December 2007, R.S.'s fiancé received a call from a bank about an unpaid loan on a Nissan Maxima. R.S. soon realized that defendant had used her information-obtained as part of R.S.'s job application process-to-obtain a loan to purchase the Nissan Maxima. She also learned that he used her information to obtain a loan to purchase a Chevy Avalanche in Arapahoe County (the Arapahoe County incident).

R.S. later filed a report with the police. She told an officer that she had given defendant her information as part of filling out a job application. However, she did not tell the officer that she had had sex with defendant.

Defendant was arrested and, in connection with the Nissan Maxima purchase (the transaction at issue in this case), charged with aggravated motor vehicle theft, section 18-4-409(2), (3)(b), C.R.S. 2015; identity theft, Ch. 326, sec. 1, § 18-5-902(l)(a), (f), 2009 Colo. Sess. Laws 1737; and nine habitual criminal counts. Defendant was also charged in connection with the Arapahoe County incident, but those charges were dismissed by the Arapaho County district attorney's office after a preliminary hearing.

At trial, defendant's theory of defense was that R.S. had agreed to finance the Nissan Maxima and had given him permission to sign her name on the loan documents. He contended that R.S. had fabricated her allegations because her fiancé would otherwise have learned that she had been having an affair with defendant.

At the close of evidence, defendant requested that the court instruct the jury on two lesser nonincluded offenses: forgery, section 18-5-102, C.R.S. 2015, and criminal impersonation, section 18-5-113, C.R.S. 2015.

The jury convicted defendant of the charged offenses and the lesser nonincluded offenses he requested. The trial court later found him guilty of the habitual criminal counts. The court sentenced defendant to forty-eight years in prison on the aggravated motor vehicle theft count, with all other sentences to run concurrently.

*The People of the State of Colo. v. Amadeus Harlan*, No. 15CA0101, 1-4 (Colo. App.

Aug. 4, 2016); ECF No. 1-1 at 3-6.

Applicant initiated a 28 U.S.C. § 2254 action in this Court on January 10, 2018. ECF No. 1. Magistrate Judge Gordon P. Gallagher directed Respondents to file a Pre-Answer Response and to address the affirmative defenses of timeliness under 28 U.S.C. § 2244(d), and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A) if Respondents intended to raise either or both in this action. ECF No. 5.

Respondents filed a Pre-Answer Response, ECF No. 12, on February 1, 2018. Applicant filed a Reply to the Pre-Answer Response, ECF No. 14, on February 12, 2018. On April 23, 2018, the Court entered an Order for Answer in Part, Dismissal in Part, and State Court Record, ECF No. 22. The April 23 Order dismissed Claim Six and the rape claim in Claim Three and directed Respondents to file an answer that addresses the remaining claims in Claim Three and Claims One, Two, Four, Five, Seven, and Eight. ECF No. 22 at 13.

The remaining claims for review on the merits are as follows:

1) The trial court violated Applicant's due process rights when it admitted evidence regarding a separate criminal case that had been filed against Applicant but ultimately was dismissed;

2) The trial court violated Applicant's due process rights when it allowed the prosecution to present inadmissible prior evidence;

3) The prosecution committed misconduct when it used language that inflamed the passions and prejudices of the jury, utilized improper propensity arguments, and misstated the evidence in closing arguments;

4) The trial court violated Applicant's due process rights when it allowed the prosecution to introduce inadmissible hearsay that negated a fact that was essential to Applicant's defense;

5) The trial court's cumulative errors denied Applicant his right to a fair trial under the state and federal constitutions;

7) The trial court violated Applicant's due process rights when it precluded defense counsel from contacting the jurors after the trial to obtain evidence that is clearly permissible under CRE 606(b); and

8) Applicant was entitled to a jury trial on the habitual criminal charges.

ECF No. 1 at 2-36.

Respondents filed an Answer, ECF No. 31, on June 11, 2018, addressing the remaining claims on the merits. Applicant filed a Reply, ECF No. 32, on June 25, 2018, and an Addendum to his Response, ECF No. 34, on December 24, 2018. After reviewing the Application, Respondents' Answer, Applicants Reply and Addendum, and the state court record, the Court concludes that the Application should be dismissed with prejudice for the following reasons.

## II. STANDARDS OF REVIEW

### A. *Pro Se* Standard of Review

Applicant is proceeding *pro se.* The Court, therefore, reviews the Application liberally and holds the pleading "to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). An applicant's *pro se* status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 958 (10th Cir. 2002).

### B. 28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Applicant bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (collecting cases). Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. "Where there has been one reasoned state judgment rejecting a federal claim," federal habeas courts should presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*. 562 U.S. at 98. In other words, the Court "owe[s] deference to the

state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [it] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "This 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question a court must answer under § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008) (citations omitted). If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

A state-court decision is contrary to clearly established federal law if: (a) the state court applies a rule that contradicts the governing law set forth in Supreme Court cases; or (b) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent. *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. 1495). The word contrary is commonly understood to mean diametrically different, opposite in character or nature, or mutually opposed. *Williams*, 529 U.S. at 405, 120 S. Ct. 1495 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08, 120 S. Ct. 1495 . . . .

*House*, 527 F.3d at 1018. (internal quotation marks omitted).

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. The Supreme Court has also stated:

[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. *Ibid.* [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by

definition preclude relief.' " *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "[A] 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists where "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435.

The Court makes this harmless error determination based upon a thorough review of the state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000). "In sum, a prisoner who seeks federal habeas corpus relief must satisfy *Brecht*, and if the state court adjudicated his claim on the merits, the *Brecht* test subsumes the limitations imposed by AEDPA." *Davis v. Ayala*, --- U.S. ---, 135 S. Ct. 2187, 2199 (2015) (citing *Fry*, 551 U.S. at 119-120).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim de novo and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III. MERITS OF APPLICANT'S REMAINING CLAIMS

**A. Claim One/ Trial Court Admission of Evidence Regarding Criminal Charge without Informing Jury that Charge was Dismissed**

In Claim One, Applicant asserts that his due process rights were violated when the trial court admitted evidence of criminal allegations against him in a previous criminal case but failed to inform the jury that the allegations ultimately were dismissed. ECF No. 1 at 5. In support of this claim, Applicant asserts that, long before the trial in the criminal case at issue in this action, the Arapahoe County District Attorney dismissed charges against Applicant that he had used the victim's financial information to purchase a truck in Arapahoe County, Colorado. ECF No. 1 at 6. Applicant concedes though that before the trial in the Jefferson County case both the prosecution and defense agreed that the Arapahoe charges would be admissible as "*res gestae*," but no agreement was reached regarding the limitation instruction. *Id.* Applicant further asserts that his due process rights were violated because the trial court denied the defense's request to poll the jury regarding the Arapahoe County criminal charges. *Id.* at 7. Applicant also asserts that a trial court violates the Due Process Clause of the United States and Colorado constitutions, when it admits evidence of a defendant's prior crimes under Colo. R. Evid. 404(b) but does not allow the jury to be informed that the defendant was acquitted of the prior crime. *Id.*

The CCA addressed Claim One as follows:

Before trial, the parties agreed that the facts of the Arapahoe County incident were admissible as res gestae. On the first day of trial, the People filed a

11

motion in limine to exclude any evidence that the Arapahoe County district attorney's office filed and later dismissed charges stemming from the Arapahoe County incident (the dismissal evidence).   The People argued that such evidence was irrelevant because there could have been a number of reasons why the prosecutor may have chosen to dismiss the charges in that case.

Defense counsel objected to the People's motion.   He argued that at the preliminary hearing in the Arapahoe County case, certain of R.S.'s statements "were shown to be false, and . . . after that information came to light, a criminal prosecution that mirrors ours, based on the same series of reports, was dismissed outright."   Thus, the dismissal evidence was relevant to the jury's "determination as to the credibility of [R.S.'s] statements."

After reviewing *Kinney v. People*, 187 P.3d 548 (Colo. 2008), the trial court granted the People's motion.   It concluded that the dismissal evidence was irrelevant because neither the parties nor the court knew why the charges had been dismissed.   The court added, "[I]f we went forward with such a showing, we would run into facts and circumstances which would be so difficult to deal with: Why were they dismissed?   Would we have an exploration of that and for what relevance?"   The court finished by noting that "[t]his is res gestae evidence. We don't talk about charges that came out of res gestae evidence.   We are simply setting the table for the charges that are to come."

## B. Standard of Review

We review for an abuse of discretion the trial court's decision excluding the dismissal evidence.   *Id.* at 557.   A trial court abuses its discretion only if its decision is manifestly arbitrary, unreasonable, or unfair, or is based on a misapprehension or misunderstanding of the law.   *See, e.g., People v. Manyik*, 2016 COA 42, ¶ 65.

Defendant preserved his pretrial contention that the dismissal evidence should have been admitted.   Accordingly, in the event the trial court erred, reversal is required unless the error was harmless.   *People v. Trujillo*, 2014 COA 72, ¶ 88.

## C. Legal Principles

In *Kinney*, the supreme court considered the circumstances under which a "defendant is entitled to introduce evidence or have the jury instructed by the trial court that he or she was acquitted of [a] prior act" that was introduced pursuant to CRE 404(b). 187 P.3d at 554-55.

The supreme court held that it is appropriate to allow the introduction of such evidence when (1) "the testimony or evidence presented at trial about the

prior act indicates that the jury has likely learned or concluded that the defendant was tried for the prior act" and (2) the jury "may be speculating as to the defendant's guilt or innocence in that prior trial." *Id.* at 557.

There is no per se rule requiring or barring the introduction of evidence of an acquittal; rather, trial courts must make the determination whether to admit such evidence on a case-by-case basis. *Id.*

Turning to the facts of Kinney, at trial

- the jury heard "no fewer than twenty-five different exchanges about witnesses' testimony at prior 'proceedings' ";

- "the jury . . . heard references to a search warrant for multiple sexual assaults by the officer investigating both [of] the [other] cases, implying that both cases were being pursued criminally";

- the victims from the other cases "testified to having interactions with officers investigating their claims, including [one of the victim's] in-depth discussion of her physical examination by an officer and physician"; and

- as a result of the multitude of references to the prior proceeding, "the jury during deliberations sent out a note requesting 'previous trial transcripts.' "

*Id.* at 558.

Based on these facts, it was clear from the record that the jury was speculating as to whether the defendant had been charged criminally with the other acts. In light of that speculation, the supreme court concluded that, under the circumstances, the trial "court's continued refusal to inform the jury about [the defendant's] acquittals in the prior cases was an abuse of its discretion." *Id.*

### D. Discussion

At the outset, we note that it is not clear that *Kinney* applies here. First, defendant was not acquitted of the charges stemming from the Arapahoe County incident. Instead, the prosecution dismissed the charges. Second, the evidence pertaining to the Arapahoe County incident was introduced as res gestae, rather than as other acts evidence under CRE 404(b).

Nonetheless, assuming that *Kinney's* reach extends to the circumstances in this case, based on our review of the record, we discern no abuse of discretion by the trial court.

It is important to note that the court made its ruling before the start of trial. At that time, there had been no witness testimony referencing either the Arapahoe County incident or any proceedings connected therewith. Nor did defense counsel argue that the jury would likely speculate as to whether defendant was charged with, or convicted of, the conduct alleged in the Arapahoe County incident. (footnote omitted).

And, as the court noted in granting the People's motion, the Arapahoe County incident was "res gestae evidence," and "[w]e don't talk about charges that came out of res gestae evidence." Rather, that evidence was being offered "simply [to] set[ ] the table for the charges that [we]re to come." Thus, given the limited purpose for which the Arapahoe County incident was offered, it was unlikely that the evidence at trial would unfold in such a way that the jury would (1) learn or conclude that defendant was charged in connection with the Arapahoe County incident and (2) speculate whether defendant was found guilty of such charges.

Furthermore, the relevancy of the dismissal evidence was speculative. In *Kinney*, the supreme court held that evidence of an acquittal on charges stemming from other acts evidence is relevant because it "make[s] it less probable that the prior act occurred as the testifying witness has alleged that it did." *Id.* at 557. But here, as the trial court observed, there are a number of reasons why the Arapahoe County prosecutor may have exercised his or her discretion in dismissing the charges arising out of the Arapahoe County incident. And the trial court had no evidence before it that the prosecutor did so based on alleged false statements by R.S. Thus, contrary to defendant's assertion on appeal, the dismissal evidence had no tendency to make it more likely that R.S. made false allegations in connection with the Arapahoe County incident.

Consequently, we discern no abuse of discretion by the trial court in excluding the dismissal evidence. *See id.*

Lastly, to the extent that defendant argues on appeal that, under *Kinney*, the court should have allowed the dismissal evidence based on later evidence at trial, he did not ask the court to reconsider its prior ruling, nor did he request an instruction informing the jury that the charges had been dismissed. Nonetheless, even assuming defendant properly preserved this issue, we would find no error.

Defendant contends that "it was clear to the jury that there was a prosecution" stemming from the Arapahoe County incident because (1) the jury heard evidence that R.S. reported the Arapahoe County incident to the police; (2)

14

the jury heard evidence that the report led to a police investigation; and (3) during closing argument, the prosecutor said "[t]he Avalanche, that's not our charge, here, the Arapahoe [C]ounty [incident]."

But here, unlike in *Kinney*, there is no clear indication in the record that the jury was speculating whether defendant was charged for his conduct in the Arapahoe County incident and whether a jury convicted him for such conduct. Indeed, (1) the incident was admitted only as res gestae, so the testimony at trial about that incident was much more limited than the testimony about the other acts in *Kinney*; (2) the jury never requested transcripts from the prior hearing; and (3) the prosecutor's use of the word "charge" in closing argument was an isolated reference and appeared to refer to the charge in this case.

Accordingly, even assuming that defendant properly preserved this issue, we conclude that the trial court did not abuse its discretion. *See id.*

*Harlan*, No. 15CA0101, at 4-12; ECF No. 31-3 at 5-13.

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). The Due Process Clause is violated only if the exclusion of the evidence violated a fundamental principle of justice. *Patterson v. New York*, 432 U.S. 197, 201-02 (1977). Applicant must show his trial was fundamentally unfair if he is to establish a violation of his compulsory process, fair trial, or due process rights: " '[i]n order to declare a denial of [fundamental fairness] [a court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.' " *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir.1997) (quoting *United States v. Valenzuela–Bernal*, 458 U.S. 858, 872 (1982) (further quotation omitted).

As a rule, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The question is whether, "considered in light of the entire record, its admission resulted in a fundamentally unfair trial." *Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) (citing *McGuire*, 502

15

U.S. at 67-68) (further quotation omitted)). Federal courts may only interfere with state evidentiary rulings when the rulings in question are "so unduly prejudicial that it renders the trial fundamentally unfair . . . ." *See Lott v. Trammell*, 705 F.3d 1167, 1190 (10th Cir. 2013) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)); *see also Tucker v. Makowski*, 883 F.2d 877, 881 (10th Cir. 1989) (state court rulings on the admissibility of evidence are not questioned in federal habeas actions unless they "render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.") (internal quotations marks and citations omitted).

The Tenth Circuit "will not disturb a state court's admission of evidence of prior crimes, wrongs, or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies the defendant due process of law." *Hancock v. Trammell*, 798 F.3d 1002, 1038 (10th Cir. 2015) (quoting *Duvall v. Reynolds*, 139 F.3d 768, 787 (10th Cir. 1998) (internal quotation marks omitted)).

An acquittal does not establish that a defendant is innocent of the charged crime; the most that an acquittal can establish is that there is reasonable doubt as to the defendant's guilt. *Dowling v. United States*, 493 U.S. 342, 348–50 (1990). The "[c]ommission of a prior bad act . . . does not need to be proven beyond a reasonable doubt and evidence of such acts can be admitted . . . 'so long as a jury could reasonably conclude that the act occurred and the defendant was the actor.' " *Villareal v. Patton*, 608 F. App'x 591, 595 (10th Cir. 2015) (quoting *Hudddleston v. United States*, 485 U.S. 681, 689 (1988)).

Upon review of the state court record, and based on the CCA's reasoning, the Court finds no basis for granting Claim One. Applicant has not demonstrated with clear and convincing evidence that the admission of the evidence of the Chevy Avalanche in Arapahoe County violated a specific constitutional right. The record reflects that neither the trial court's decision

not to include the dismissal of the Avalanche purchase charges nor the CCA's decision were contrary to federal law or objectively unreasonable in light of the evidence presented in the state court proceedings. The probative value of the evidence was not so greatly outweighed by any prejudice flowing from the denial of the admission of the dismissal denied Applicant due process of law. The denial of the dismissal evidence did not render Applicant's trial fundamentally unfair. Therefore, Applicant is not entitled to federal habeas relief in Claim One.

**B.   Claim Two/Use of Inadmissible Prior Evidence**

In Claim Two, Applicant asserts that under Colo. R. Evid. 404(b) evidence of other crimes, wrongs, or acts committed by the accused are inadmissible to prove the character of the person and to demonstrate the propensity of the accused to commit the offense at issue or to show the accused acted in conformity with the character. ECF No. 1 at 11. Specifically, Applicant refers to two other State of Colorado criminal cases, Case Nos. 03CR623 and 03CR237, used as evidence, which took place five years prior to the case at issue in this Application. *Id.*

Applicant contends that to use a conviction of a crime to prove an individual is guilty of another crime is a violation of due process rights. *Id.* Applicant also contends that in this case he did not commit identity theft or motor vehicle theft, because he used the victim's information with her consent. *Id.* He further contends that his mental state in 2002, when the prior crimes took place, is irrelevant to his mental state in 2007, when the alleged instant crime took place. *Id.* at 13. Applicant also contends that the limiting instructions did nothing to alleviate the danger of unfair prejudice in this case, because the court's oral instruction was a "confusing 'litany' of arguably irrelevant purposes," and the written limiting instruction permitted the jury to rely on the "prohibited propensity inference." *Id.* at 15.

17

Applicant further contends that the prosecution used her position to influence the jurors, when she told them that they "could believe [the victim]," and she improperly urged the jury during closing argument to use the prior crime evidence as proof of Applicant's bad character. *Id.* at 16. Finally, Applicant contends that the evidence against him was not overwhelming, and the jury heard only what the prosecution wanted them to hear, which was false testimony. *Id.*

The Colorado CCA addressed Claim Two as follows:

### B. Standard of Review

We review the trial court's decision to admit other acts evidence for an abuse of discretion. *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009); *see also Manyik*, ¶ 65.

Because defendant objected to the admission of the other acts evidence, we review his contention for harmless error. *Yusem*, 210 P.3d at 469.

### C. Legal Principles

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." CRE 404(b). However, other acts evidence is admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

Before admitting other acts evidence, the trial court must be satisfied that (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the evidence's relevance is independent of the prohibited inference that the defendant was acting in conformity with his bad character; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).

### D. Discussion

Defendant contends that the trial court erred in admitting evidence of the Mustang purchase and the Citywide loan to prove a common plan, scheme, or design and to prove intent. Specifically, he asserts that (1) his intent was not at issue; (2) the relevance of the other acts evidence was not independent of CRE 404(b)'s prohibited inference; (3) there was no nexus between the acts to establish a common plan, scheme, or design because the other acts occurred five years before the conduct charged in this case; and (4) the probative value of the other

18

acts evidence was outweighed by its danger for unfair prejudice. We are not persuaded.

First, we disagree that intent was not at issue in this case. To obtain a conviction for identity theft, the prosecution had to prove that defendant acted "without permission or lawful authority." § 18-5-902(1)(a), C.R.S. 2015. Similarly, to obtain a conviction for aggravated motor vehicle theft, the prosecution had to establish that defendant obtained a motor vehicle by deception. § 18-4-409(2). And, in his opening brief, defendant states that his theory of defense was that R.S. "gave him permission to use her information, and therefore he had no intent to deceive." Thus, defendant's intent was a relevant and contested issue at trial.

Second, in his opening brief, defendant concedes that "the methods used to commit the prior crimes are similar to the methods used to commit the instant crimes."

Nevertheless, we note that, as in this case, the other acts evidence indicated that defendant (1) obtained K.C.'s personal information for what appeared, at the time, to be a legitimate purpose — test driving a vehicle and applying for credit; (2) attempted to purchase a vehicle and obtain a loan; (3) told the Citywide loan officer that he was a former Denver Bronco; (4) assured the Ford salesman and Citywide loan officer that K.C. would serve as a co-signer when the transactions fell through; and (5) handed the Ford salesman and Citywide loan officer loan documents that were purportedly executed by K.C.

Accordingly, based on the similarities between the prior acts and the present act, we agree with the trial court's conclusion that the prior acts evidence supports an intermediate inference that defendant acted in accordance with a common scheme. And this intermediate inference, in turn, supports the ultimate inferences that defendant (1) was not authorized to use R.S.'s signature and (2) obtained the Nissan Maxima by deception. *See People v. Rath*, 44 P.3d 1033, 1040 (Colo. 2002) (noting that evidence of a plan, scheme, or design, "while not usually elements or ultimate facts themselves, . . . are well-accepted methods of proving the ultimate facts necessary to establish the commission of a crime, without reliance upon an impermissible inference from bad character").

Third, we disagree that there was no "nexus or relationship" between the acts "from which a continuous scheme or a common design can be discerned," *People v. Honey*, 198 Colo. 64, 68, 596 P.2d 751, 754 (1979), superseded by rule as stated in *Rath*, 44 P.3d 1033, because five years passed between them.

The similarities discussed above adequately establish a "nexus or relationship" between the acts. *See People v. Delsordo*, 2014 COA 174, ¶¶ 18-19 (noting that the similarity between uncharged and charged offenses may

provide the necessary relationship to establish a common plan or scheme); *People v. Janes*, 942 P.2d 1331, 1336 (Colo. App. 1997) (concluding that evidence of prior sexual assault convictions was admissible to show a common plan despite the fact that seven years passed between the acts).   And, in our view, the passage of time between the acts affects only the weight of the evidence, not its admissibility.   *See People v. Gladney*, 194 Colo. 68, 71, 570 P.2d 231, 233 (1977) (concluding that where prior threats are admitted in a murder prosecution to show motive, "remoteness of the threats in time relates only to the weight to be given the evidence, not to its admissibility"); *see also Honey*, 198 Colo. at 68, 596 P.2d at 754 (noting that in determining whether prior acts and charged acts constitute a common scheme or design, "[f]actors to be considered are similarity of character and time of commission of the offenses").

Fourth, we are not convinced that the probative value of the other acts evidence was outweighed by its danger for unfair prejudice.   Defendant contended that he had permission to use R.S.'s information and therefore had no intent to deceive.   (footnote omitted).   And, as we just explained, the evidence of defendant's common scheme tended to prove that he acted without R.S.'s authorization and that he obtained the Nissan Maxima by deception.   Thus, the probative value of the other acts evidence was substantial.

Moreover, all good evidence will prejudice a defendant.   *See, e.g., People v. Cardenas*, 2014 COA 35, ¶ 52.   CRE 403 only bars evidence that has "some undue tendency to suggest a decision on an improper basis, commonly an emotional basis, such as bias, sympathy, hatred, contempt, retribution, or horror." *Id.* (citation omitted).   And here, the prior acts evidence was not the type to inflame the passions of the jury, indicating a decision on an improper basis.

*Harlan*, No. 15CA0101, at 14-19; ECF No. 31-3 at 15-20.

As stated above by the Court in addressing Claim One, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence.   *See McGuire*, 502 U.S. at 67-68.   The question is whether, "considered in light of the entire record, its admission resulted in a fundamentally unfair trial."   *Knighton*, 293 F.3d at 1171 (citing *McGuire*, 502 U.S. at 67-68).   Federal courts may only interfere with state evidentiary rulings when the rulings in question are "so unduly prejudicial that it renders the trial fundamentally unfair . . . ."   *See Lott*, 705 F.3d at 1190 (quoting *Payne*, 501 U.S. at 825); *see also Tucker*, 883 F.2d at 881 (state court rulings on the admissibility of evidence are not questioned in federal habeas actions unless they

"render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.") (internal quotations marks and citations omitted).

The Tenth Circuit "will not disturb a state court's admission of evidence of prior crimes, wrongs, or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies the defendant due process of law." *Hancock*, 798 F.3d at 1038 (quoting *Duvall*, 139 F.3d at 787).

Upon review of the state court record, and based on the CCA's reasoning, the Court finds no basis for granting Claim Two. Applicant has not demonstrated with clear and convincing evidence that the admission of the evidence of the previous State of Colorado criminal cases, Case Nos. 03CR623 and 03CR237, which took place five years prior to the case at issue in this Application violated a specific constitutional right. The record reflects that neither the trial court's decision to include the evidence of the prior criminal cases nor the CCA's decision were contrary to federal law or objectively unreasonable in light of the evidence presented in the state court proceedings. The probative value of the evidence was not so greatly outweighed by any prejudice flowing from the admission of the evidence that Applicant was denied due process of law. The admission did not render Applicant's trial fundamentally unfair. Therefore, Applicant is not entitled to federal habeas relief in Claim Two.

## C. Claim Three/Prosecutorial Misconduct

In Claim Three, Applicant sets forth several allegations of prosecutorial misconduct that remain for a review of the merits. First, he asserts that the prosecution improperly characterized him as a conman in opening and closing statements. ECF No. 1 at 18 and 25. Second, Applicant asserts that the prosecution was well aware that R.S. had committed perjury in Applicant's prior Arapahoe County criminal case, which was the key reason for the dismissal of

the case, yet the prosecution expressed her opinion about R.S.'s credibility in the closing argument.   *Id.* at 19.   Third, Applicant asserts that the prosecution used Colo. R. Evid. 404(b) evidence to prove bad character and propensity during closing.   *Id.* at 21.   Fourth, Applicant asserts that the prosecution improperly asked the jury to hold him accountable for the crimes he committed.   *Id.* at 22.   Finally, Applicant asserts that the prosecution misstated crucial evidence during the rebuttal closing.   *Id.* at 23.

The CCA addressed Claim Three as follows:

"[A] prosecutor, while free to strike hard blows, is not at liberty to strike foul ones."   *Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005) (quoting *Wilson v. People*, 743 P.2d 415, 418 (Colo.1987)).   Indeed, the law prohibits prosecutors from using "improper methods designed to obtain an unjust result."   *Id.*

"The scope of closing argument should not be unduly restricted[,] [however,] due to the nature of our adversarial system."   *Id.*   Thus, parties have "wide latitude" during closing argument.   *Id.*   Closing argument "may properly include the facts in evidence and any reasonable inferences drawn therefrom." *Id.*   Furthermore, the prosecution may employ "rhetorical flourishes" in closing arguments.   *Id.*   But "[e]xpressions of personal opinion, personal knowledge, or inflammatory comments" are prohibited.   *Id.* at 1049.

Defendant did not object to any of the prosecution's allegedly improper arguments.   Accordingly, reversal is required only if there was plain error.   *See* Crim. P. 52(b); *People v. Tillery*, 231 P.3d 36, 44 (Colo. App. 2009), *aff'd sub nom. People v. Simon*, 266 P.3d 1099 (Colo. 2011).

"Prosecutorial misconduct in closing argument rarely constitutes plain error."   *Tillery*, 231 P.3d at 44.   To qualify, "prosecutorial misconduct must be 'flagrant or glaringly or tremendously improper,' and so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction."   *Id.* (quoting *People v. Salyer*, 80 P.3d 831, 839 (Colo. App. 2003)).   The defendant's "[l]ack of an objection is a factor to be considered in examining the impact of a prosecutor's closing argument . . . [because] [t]he lack of an objection may demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging."   *Id.* (quoting *People v. Rodriguez*, 794 P.2d 965, 972 (Colo. 1990)).

*Harlan*, No. 15CA0101 at 19-21; ECF No. 31-3 at 20-22.

The clearly established federal law relevant to a constitutional claim challenging a prosecutor's allegedly improper comments is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *See Parker v. Matthews*, 567 U.S. 37, 44 (2012) (*per curiam*). In *Darden*, the Supreme Court explained that a prosecutor's improper comments violate the Constitution only when the misconduct " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002). To determine whether prosecutorial misconduct rendered the trial fundamentally unfair, the Court must consider "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial." *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998) (citations omitted). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.' " *Parker*, 567 U.S. at 47 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Federal law clearly provides that to constitute a due process violation the prosecutorial conduct must be of sufficient significance to result in the denial of a defendant's right to a fair trial. *Donnelly*, 416 U.S. at 645.

"Alternatively, if the alleged prosecutorial misconduct denied the petitioner a specific constitutional right (rather than the general due process right to a fair trial), a valid habeas corpus claim may be established without proof that the entire trial was rendered fundamentally unfair." *Le*, 311 F.3d at 1013 (citation omitted). Nonetheless, not every improper and unfair remark made by a prosecutor will amount to a federal constitutional deprivation. *See Caldwell v. Mississippi*, 472 U.S. 320, 338 (1985) (plurality opinion).

The Court's inquiry into the fundamental fairness of a trial can only be made after examining the entire proceeding. *Donnelly*, 416 U.S. at 643. The complained-of remarks or arguments must be considered in the context in which they were made. *Greer v. Miller*, 483 U.S. 756, 765-66 (1987); *see also Darden*, 477 U.S. at 179. In evaluating improper remarks made by the prosecutor, the Tenth Circuit has stated that:

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution . . . . We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements . . . . When a prosecutor responds to an attack made by defense counsel, we evaluate that response in light of the defenses argument . . . . Ultimately, we must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly.

*Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994) (internal quotation marks and citations omitted). The Court also considers the prejudice to Applicant, if any, that results from the prosecutor's comments. *Brecheen v. Reynolds*, 41 F.3d 1343, 1355 (10th Cir. 1994) (citing *Mahorney v. Wallman*, 917 F.2d 469, 472-73 (10th Cir. 1990)).

Colorado's plain error test is rooted in due process. *See People v. Kruse*, 839 P.2d 1, 3 (Colo.1992) ("Plain error occurs when . . . the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.") (internal quotation marks and citation omitted). Because there is no practical distinction between Colorado's plain error test and the federal due process test that requires reversal when error "so infused the trial with unfairness as to deny due process of law," *McGuire*, 502 U.S. at 75 (internal quotation marks and citation omitted), the deferential standard of review applies unless the CCA unreasonably applied federal due process law, *see Thornburg v. Mullin*, 422 F.3d 1113, 1124-25 (10th Cir. 2005) (citing 28 U.S.C. § 2254(d)). The Court must defer to the CCA's

ruling unless it "unreasonably appli[ed]" that test.  *Id.* (citing 28 U.S.C. § 2254(d)); *see also*

*Dockins v. Hines*, 374 F.3d 935, 940 (10th Cir. 2004).

State court factual findings, including credibility findings, are presumed correct, absent

clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1); *see also Marshall v.*

*Lonberger*, 459 U.S. 422, 431-34 (1983).  Applicant has not demonstrated that the factual

findings of the state court are clearly and convincingly incorrect.  Applicant's allegations in

Claim Three are for the most part general statements.  Applicant sets forth partial statements by

the prosecution, but he does not refer to any portion of the record that would provide clear and

convincing evidence of prosecutorial misconduct that rises to the level of a violation of

Applicant's due process rights in support of each general statement.

In addressing the misconduct claims, it is first noted that jurors are presumed to follow

the instructions given by the judge.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citation

omitted).  Here, the trial judge instructed jurors that opening statements are not evidence and are

only provided to jurors to help them understand what the evidence might be.  Dec. 7, 2009 Trial

Tr. at 30.

The Court addresses each claim of misconduct below.

**i.  Con Man Statements**

In this part of Claim Three, Applicant asserts that the prosecution called Applicant a con

man once during opening statement and twice during the rebuttal in closing.  ECF No. 1 at 18

and 25.  Applicant sets forth three separate statements by the prosecution in either the opening

statement or the closing statement.  The first statement by the prosecution during the opening

statement Applicant asserts is as follows:

What you're going to hear is that the defendant, who goes by the name Amadeus Harlan, he's a conman . . . . The defendant is a conman, and he used that con of being a denver [sic] broncos [sic] player for special treatment when he went into Empire Lakewood Nissan.

ECF No. 1 at 18. The Court found this statement at Case No. 08CR1681, Dec. 7, 2009 Trial Tr. at 36.

The second and third statements that Applicant asserts were made by the prosecution during closing are as follows:

So let's talk about a common plan, scheme, let's talk about modus operandi. Because what you know is the defendant is a conman; and

Ladies and gentleman, the defendant is guilty. He is a conman. He conned Empire Lakewood Nissan. He conned Robert McMann with Nissan. And he conned [R.S.].

ECF No. 1 at 18-19. The Court found these statements at Dec. 10, 2009 Trial Tr. at 137 and 143.

The Colorado CCA addressed this part of Claim Three as follows:

One of the prosecutors began her opening statement as follows:

I want to tell you a little bit about the evidence in this case. What you're going to hear is that the defendant, who goes by the name Amadeus Harlan, he's a conman. He's very engaging, very personable, and he likes to tell stories and he draws people in.

One of the stories that he likes to tell is that he was a former Denver Broncos player[ ]. Sometimes he claims he played in a Super Bowl. Sometimes the story gets bigger. Sometimes he uses it. Sometimes he doesn't.
. . . .

The defendant is a conman, and he used that con of being a Denver Broncos player for special treatment when he went into Empire Lakewood Nissan. He also used that ruse, claiming to be a former Denver Bronco, when he met [R.S.].

Then, in rebuttal closing argument, the other prosecutor said,

So let's talk about a common plan, scheme. Let's talk about modus operandi. Because what you know is the defendant is a conman. He's a big talker. He sometimes tells people he played in the Super Bowl, sometimes he claims he was a Denver Bronco, sometimes it was just a sports agent. To [the Nissan employee] it was just the practice squad of the Broncos. Any day, any different person, he has a different story.

Let's talk about the situation with that Roush Mustang at Sill-Terhar back in 2002. The defendant goes to Sill-Terhar Ford in Broomfield, Colorado. He speaks with [the Ford salesman]. This time he's not claiming to be a Bronco. He wants the Mustang to get chicks, because the girls will be impressed. He's getting a top-of-the-line Mustang. He doesn't have credit, so his brother, [K.C.], will sign for him.

What does he do? He is so bold in his common plan and scheme that he has going on, he takes -- this man over here, takes [the Ford salesman] to the post office on Quebec Street in Commerce City, to the real [K.C.]'s place of business, and he has an accomplice in the building, whether it's an employee that he knows or someone else. He has an African American man come out, pretend to be [K.C.], and sign that paperwork.
. . . .
Does that sound familiar? In 2007, he takes [the Nissan employee], just like he took [the Ford salesman] in 2002, to [R.S.'s] place of business and comes out with signed documents.

This isn't a case that because he's done it once, he's done it again. This is the case that this is his plan, this is his scheme, this is his MO. This is the way he does things. You can look at the similarities there. How he has done that time and time -- how he did that in 2002 and how he did that with [R.S.] regarding the Nissan.

The prosecutor concluded his rebuttal closing argument, saying,

Ladies and gentlemen, the defendant is guilty. He is a conman. He conned Empire Lakewood Nissan. He conned [the employee] with Nissan. And he conned [R.S.]. She did not consent to any of this, and consent does not apply to that motor vehicle theft, because Empire is the victim of that charge.

Citing *People v. Mason*, 643 P.2d 745, 752 (Colo. 1982), defendant asserts that the prosecutors' characterization of him as a con man was (1) an expression of their personal opinion that he was guilty and (2) calculated to inflame the passions and prejudice of the jury. Under the circumstances, we disagree.

In *Mason*, the defendant was charged with fraud by check after he wrote three bad checks to a local grocery store. *See id.* at 749. At the defendant's trial, during closing argument, the prosecutor called the defendant a "con man" "in contrasting the defendant's extrajudicial statements with his trial testimony." *Id.* at 750. On appeal, the supreme court held that the prosecutor's characterization of the defendant as a con man was improper because it "indicate[d] either a misplaced zeal to win the case or an ignorance of the elemental principles of trial protocol." *Id.* at 752. But the supreme court further concluded that the prosecutor's comments did not require reversal under the plain error standard. *See id.* at 752-53.

In our view, this case is distinguishable from *Mason* because the prosecutor's characterization of defendant as a con man was a fair statement of the evidence and, unlike in Mason, was not used to cast aspersions on defendant's trial testimony. *See People v. McBride*, 228 P.3d 216, 222-23 (Colo. App. 2009) (noting that in an earlier supreme court case, the prosecutor's reference to the defendant as a "despicable coward" was not improper where "[t]he evidence afforded ample justification for the language") (alteration in original) (citation omitted).

A "con" is defined as a "fraudulent appropriation of money." Webster's Third New International Dictionary 468 (2002). And, when used as a verb, "con" means "to swindle" or "persuade or lure (a person) to the advantage of the persuader." *Id.*

In this case, the evidence admitted at trial showed that defendant fraudulently obtained financing (money) to purchase a car by deceiving R.S. and the Nissan dealership. Thus, the prosecutor's characterization of defendant as a con man was a fair comment on the evidence. *See Domingo-Gomez*, 125 P.3d at 1048 (closing argument "may properly include the facts in evidence and any reasonable inferences drawn therefrom").

*Harlan*, No. 15CA0101, at 21-25; ECF No. 31-3 at 22-26.

Applicant fails to demonstrate with clear and convincing evidence that he did not fraudulently obtain financing to purchase a car by deceiving R.S. and the Nissan dealership. He further fails to demonstrate that he was affiliated with the Denver Broncos organization in any

capacity or that he did not tell a Nissan employee that he was a member of the Broncos practice squad or an Empire Lakewood Nissan employee that he was a Denver Broncos player. Applicant also fails to demonstrate with clear and convincing evidence that he did not take a Ford salesman to his brother, K.C.'s place of business where he had an African American man pretend to be K.C. and sign paperwork for a vehicle.

Considering the context in which the prosecution made the con man comments, *Greer*, 483 U.S. at 765-66; *see also Darden*, 477 U.S. at 179, the CCA was correct in finding the comments were supported by the evidence. It was a reasonable inference to find Applicant was a con man. Based on the evidence relied on by the prosecution in inferring Applicant is a con man, the jury was able to judge the evidence fairly. *Fero*, 39 F.3d at 1474.

The Court also notes that in the Reply Applicant raises two additional claims of prosecutorial misconduct regarding (1) a fictitious tattoo; and (2) false Citywide Bank evidence. ECF No. 32 at 32-33. Applicant contends the prosecution referred to the tattoo and the Citywide bank evidence in support of their claim that Applicant is a con man. These claims were not raised in the § 2254 Application filed by Applicant or in Applicant's opening brief, ECF No. 12-13, before the CCA.

The Court need not address claims that are raised for the first time in a reply brief. *See United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir., 2002) (citing *Codner v. United States*, 17 F.3d 1331, 1332 n. 2 (10th Cir. 1994); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 724 (10th Cir. 1993)). If claims are inappropriately raised pursuant to *Mora*, they most likely are barred from federal habeas review either as time-barred under 28 U.S.C. § 2244(d) or unexhausted and procedurally barred pursuant to *Steele v. Young*, 11 F.3d 1518, 1521 (10th Cir. 1993) (citations omitted). Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may

not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).

The Court, however, does note that two witness, Mr. Wilson and Mr. Meyers, testified that Applicant either showed, or they saw, a tattoo on his arm of the Super Bowl emblem and a player's number.   Dec. 7, 2009 Trial Tr. at 57 and 97.   Accordingly, there was evidence that Applicant had a tattoo with a player number and a Super Bowl emblem.   Even if the tattoo did not contain a Denver Bronco emblem an inference could be made that Applicant was involved with a professional football team.

The Court concludes that the CCA correctly determined that the con man comments did not so infect the trial with unfairness that Applicant's conviction denied his due process rights. Applicant's con man claims lack merit or any finding of error.

### ii.   R.S.'s Credibility Statement

The credibility claim was presented in the Application as a corroboration between the prosecution and R.S. to present an untruthful "story of events" and to "deceive the jury" about Applicant's guilt.   ECF No. 1 at 20.   Applicant asserts in the Application the following:   (1) he and R.S. slept together more than once; (2) he gave her an engagement ring that she bragged about and showed to everyone; (3) R.S. first told police she did not know applicant, but subsequently told police she had sex with Applicant in her car one time, filled out a job application for Applicant's company, went to car dealerships with him, and picked up the license plates for his cars; (4) R.S. reported identity theft to police but then would not go to police station to complete paper work; (5) car salesmen and finance managers from both car dealerships

identified R.S. as the woman involved in the car purchases; and (6) payments on both cars were current and made by Applicant. ECF No. 1 at 20-21. In the fifty-one-page Reply, Applicant for the most part reargues the credibility of the evidence presented at trial. ECF No. 32. Only on Page 42 of the Reply does Applicant refer to the prosecution's improper statement to the jury that they should believe R.S., because she was credible and honest. ECF No. 32 at 42.

In Applicant's opening brief on appeal to the CCA, counsel presented the credibility claims as follows:

> Further, the prosecution improperly expressed her personal opinion of [R.S.'s] credibility. *See Walters*, 148 P.3d at 334 ("it is not proper for a prosecutor to . . . make statements reflecting his or her personal opinion"). The prosecutor opined in closing:
>
> > [R.S.] goes and talks to the police and they ask what happened, she leaves out the fact that she slept with [Mr. Harlan] and she felt like a dupe . . . . She leaves that part out. *But everything else she told the truth* and it has been shown in this courtroom by evidence.
>
> (R. Tr. 12/10/09, p 115) (emphasis added).

ECF No. 12-13 at 35.

The Colorado CCA addressed this part of Claim Three as follows:

> During closing argument, the prosecutor said,
>
> That is when you start looking at credibility and the credibility of all evidence; and in the end, the credibility of [R.S.]. Yes, she lied about sex. In the big picture of things you're going to have to decide because she lied about the sex or flowers, does that mean you cannot believe anything else she said? Having a fling with that man while engaged, embarrassing. Potentially scary, huge shift in her life. But does it affect the gravamen, the kernel, the essence of what we're talking about?
> . . . .
> [R.S.] goes and talks to the police and they ask what happened, she leaves out the fact that she slept with [defendant] and she felt like a dupe. She was this guy's pigeon. She leaves that part out. But

> everything else she told the truth and it has been shown in this
> courtroom by evidence.
>
> Reading the prosecutor's comments in context, we conclude that they did
> not amount to a personal opinion of R.S.'s credibility. Instead, the prosecutor
> was (1) commenting on evidence that had bearing on R.S.'s credibility; (2) told
> the jury that it had to weigh that evidence in light of the other evidence admitted
> at trial; and (3) argued that the evidence at trial supported R.S.'s version of
> events. Thus, the prosecutor's argument was not improper. *See People v.
> Wilson*, 2014 COA 114, ¶ 55 ("The context in which the prosecutor used the
> potentially problematic words 'truth' and 'truthful' . . . reveals that the prosecutor
> was drawing reasonable inferences from the evidence rather than professing her
> personal opinion as to [the victim]'s veracity.").

*Harlan*, No. 15CA0101, at 26-27; ECF No. 31-3 at 27-28.

"[I]t is unprofessional conduct for the prosecutor to express his or her personal belief or

opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant."

*United States v. Young*, 470 U.S. 1, 8, (1985) (alteration in original) (quoting ABA Standards for

Criminal Justice 3–5.8(b) (2d ed.1980)). The Tenth Circuit has found that impermissible

vouching occurs when "the jury could reasonably believe that the prosecutor is indicating a

personal belief in the witness' credibility, either through explicit personal assurances of the

witness' veracity or by implicitly indicating that information not presented to the jury supports

the witness' testimony." *Hanson v. Sherrod*, 797 F.3d 810, 838 (10th Cir. 2015) (quoting

*United States v. Harlow*, 444 F.3d 1255, 1262 (10th Cir. 2006) (citation and internal quotation

marks omitted)).

In *United States v. Jones*, 468 F.3d 704, 707 (10th Cir. 2006), the Tenth Circuit held that

"presenting evidence of [the witness's] obligation or motivation to testify truthfully is

unobjectionable." "[I]t is not improper for a prosecutor to direct the jury's attention to evidence

that tends to enhance or diminish a witness's credibility." *See Thornburg*, 422 F.3d at 1132.

"[W]hat would be impermissible, is to give [a prosecutor's] own opinion on [an applicant's]

credibility or to suggest that [s]he knew something more about [an applicant's] credibility than could be deduced from the evidence at trial." *Hanson*, 797 F.3d at 838.

Applicant does not set forth in either the Application or the Reply with clear and convincing evidence any specific statements that the prosecution made, which would suggest that she knew something more about R.S.'s credibility. Based on the CCA findings and record, the prosecution did no more than to discuss R.S.'s credibility, which could be deduced from the trial evidence, which had been presented to the jury. The CCA, therefore, did not unreasonably apply federal law in addressing the credibility claim.

### iii. Other Acts Evidence

Applicant asserts that evidence of other crimes is not admissible to prove character or propensity under Colo. R. Evid. 404(b). ECF No. 1 at 21. Applicant also asserts that in the closing statement the prosecution used Rule 404(b) evidence to prove bad character and propensity when one of the prosecutors told the jury:

> [w]e hear this over and over and over again. But in the end, when you apply all of that to what he does and what he has done, he is someone who conned the Nissan dealership. He is someone who takes advantage of people, and in this case, he steals motor vehicles, assumes identities. This is how he operates. This is what he does.

ECF No. 1 at 22. Applicant contends that pursuant to *Jones,* 832 P.2d at 1039, a prosecutor's reference to a defendant's style, or how a defendant operates, improperly suggests that the defendant had a criminal character and left the jury free to speculate concerning the nature of the defendant's prior misconduct. *Id.* Applicant further asserts that the prosecutor used Rule 404(b) evidence to suggest that Applicant was a career criminal by stating:

> And when [the defense says] Mr. Harlan didn't do this or he had permission to do that . . . you are allowed to look at the 404(b) evidence. How he comported himself when getting that loan in front of Mr. Ethell. [note omitted] How he

comported himself at Silterhar . . . making every one believe he had the authority of Mr. Conrad and the approval and the permission of Mr. Conrad when he did not.

*Id.*

The Colorado CCA addressed this part of Claim Three as follows:

> At the start of his closing argument, one of the prosecutors said,
>
> Folks, the evidence is now completed and before you is all you need to convict the defendant of all charged crimes. What we have heard from witness after witness about the defendant. He is big, he is loud, he is brash, walks around places like he owns them. He holds himself out as this Denver Bronco, talks about Harlan 21, big plans, big motives, big ideas.
>
> We hear this from [the Citywide loan officer]. We hear this from [the Nissan employee]. We hear this from [R.S.]. We hear this from [R.S.'s] coworkers. We hear this over and over and over again. But in the end, when you apply all of that to what he does and what he has done, he is someone who conned the Nissan dealership. He is someone who takes advantage of people, and in this case, he steals motor vehicles, assumes identities. This is how he operates. This is what he does.
>
> Soon after those comments, the prosecutor told the jury that
>
> [it] did hear about other [crimes]. You heard from a handful of witnesses, [the Citywide loan officer], [K.C.], [the Ford salesman], about other circumstances. And in those circumstances you are allowed to use those situations not — not because he had done something bad before, thus he must have done something bad this time. No. The proper use of that is how does it reflect on his motivation, knowledge, his intent.
> . . . .
>
> You may also use all this information about the prior loans and the Mustang as it applies to a common plan or scheme. He uses photocopies. He gets this information. He gets these driver's licenses. And that's what he did in this case, a photocopied license of [R.S.]. All information provided by [defendant], walking away, things are signed, come back. All of those things.

The prosecutor here did not argue that because defendant committed the prior acts, he has bad character and therefore must have committed the crimes in this case. In fact, the prosecutor explicitly told the jurors that they were not to use the other acts evidence to draw such an inference.

Rather, read in context, and as discussed in Part III, the prosecutor was properly arguing that when the jury considers the other acts and "appl[ies] [them] to what he does and what he has done," they support an inference that defendant signed R.S.'s name on the loan documents without R.S.'s permission and deceived the Nissan dealership.

*Harlan*, No. 15CA0101 at 30-31; ECF No. 31-3 at 31-32.

Before the Citywide loan officer, Mr. Ethell, testified, the trial court instructed the jury that the testimony they were about to hear was admitted for a very limited purpose. See Dec. 9. 2009 Trial Tr. at 80. The court told the jury that they may consider the evidence only for the purpose of considering motive, common plan or scheme, knowledge, or intent. *Id.* Furthermore, as stated above, when the prosecutor referred to Mr. Ethell during closing, the prosecutor reminded the jurors that they could only use this testimony when considering how it reflects on Applicant's motivation, knowledge and intent. Dec. 10, 2009 Trial. Tr. at 112-13.

Finally, based on the findings above in Claim Two that the admission of evidence of prior crimes, wrongs, or acts in this case did not greatly outweigh the probative value of such evidence, and as a result Applicant was not denied due process of law, *Hancock*, 798 F.3d at 1038, the prosecution's reference to the prior acts in the closing statement did not equate to prosecutorial misconduct. The CCA, therefore, did not unreasonably apply federal law in addressing the prior acts claim.

### iv. Hold Accountable for Crimes Committed

Applicant asserts the accountability arguments divert the jury from its duty to determine whether the State has met its burden of proving that Applicant was guilty beyond a reasonable doubt.   ECF No. 1 at 22.

The Colorado CCA addressed this part of Claim Three as follows:

> The prosecutor's statement was not a plea to the jury to "enforce the law or teach defendant[ ] [a] lesson[ ]."   *State v. Salitros*, 499 N.W.2d 815, 819 (Minn. 1993).   Rather, the prosecutor's request was another way of (properly) asking the jury to return guilty verdicts.

*Harlan*, No. 15CA0101 at 32; ECF No. 31-3 at 33.

"It is improper for a prosecutor to suggest that a jury has a civic duty to convict," *Thornburg*, 422 F.3d at 1134; *see also Viereck v. United States*, 318 U.S. 236, 247-48, (1943) (improper to appeal to "wholly irrelevant" issues).   Also, "[p]rosecutors are not permitted to incite the passions of the jury by suggesting they can act as the 'community conscience' to society's problems."   *See United States v. Rogers*, 556 F.3d 1130, 1143 (10th Cir. 2009).

In this case, the prosecutor stated "[l]adies and gentlemen, I'm asking you to return guilty verdicts on all of these counts.   The defendant needs to be held accountable for the crimes he's committed here."   Dec. 10, 2009 Trial Tr. at 143.   The comment by the prosecutor was made at the end of the rebuttal in closing argument.   In rebuttal, the prosecutor had reviewed for the jury the evidence that had been presented at trial.   *Id.* at 134-43.   The closing statement by the prosecutor was not a reference to wholly irrelevant issues, but it was an argument for a guilty verdict based on the evidence presented at trial, *see Thornburg*, 422 F3d at 1134, which would result in Applicant being held accountable.   The CCA, therefore, did not unreasonably apply federal law in addressing the accountability claim.

### v.  Misstated the Evidence

Applicant asserts that the prosecution misstated crucial evidence during rebuttal.   ECF

No. 1 at 23.   Applicant further asserts that the prosecutor argued without absolutely no

evidentiary support that R.S. and Applicant walked from the entry area of R.S.'s office to a back

office to sign loan papers, and the papers were "within a foot of" R.S., but she does not sign the

papers.  *Id.*   Applicant contends that these facts were not presented through testimony.  *Id.*   He

further asserts the evidence presented was that R.S. and applicant walked to the back office, but

no one saw them enter a conference room and no witness stated that R.S. was in the conference

room with Applicant when the papers were signed.  *Id.* at 23-24.

The Colorado CCA addressed this part of Claim Three as follows:

> During rebuttal closing, the prosecutor argued,
>
> If [the victim] consented, why didn't she sign it?   She was right
> there, according to the defense.   If that Becca, that person that [the
> Nissan employee] could not identify, if that really was [R.S.] —
> and maybe it was, we don't know — but if that was her, she's right
> there, why didn't she just sign it.   Because she didn't consent to
> this.
>
> [The Nissan employee] said, [w]e went there; I was introduced to
> her; her name was Becca; I think I said, I'm with Empire Nissan,
> let's wrap this up; she look[ed] irritated.   Why would she look
> irritated if she was agreeing to this?
> . . . .
> [Defendant] immediately takes the paperwork, takes her, and walks
> to the back.   [The Nissan employee] leaves.   We don't know what
> happened between the two of them.   But we know she didn't sign
> it.  *The papers are within a foot of her, inches.   She doesn't sign
> it.*   He does.   Why would he sign it when she is right there if she's
> giving permission.

(Emphasis added.)

Defendant contends that the emphasized portion of the prosecutor's
rebuttal closing argument was a misstatement of the evidence because there was

no evidence that "the papers" were within a foot or inches of R.S. when she and defendant walked to the back of the office.

      At trial, the Nissan employee testified that when he arrived at R.S.'s workplace, (1) defendant introduced him to a woman — who defendant contended was R.S. — and (2) he "had the folder in front of [him] with all the documents and I had them highlighted with where to sign." Based on this testimony, we conclude that the prosecutor's argument was not a misstatement of the evidence. *See Domingo-Gomez*, 125 P.3d at 1048.

*Harlan*, No. 15CA0101 at 32-33; ECF No. 31-3 at 33-34.

Applicant fails to demonstrate that the decision of the CCA is contrary to clearly established federal law. He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018. Furthermore, as pointed out by the CCA, nothing that the prosecutor stated regarding the proximity of the documents to R.S. and her failure to sign the documents misstated the evidence as presented by witnesses. The CCA, therefore, did not unreasonably apply federal law in addressing the accountability claim.

### vi. Conclusion

Applicant fails to present clear and convincing evidence based on the trial court record that would invalidate the CCA's finding and would support a finding that the prosecution's comments during opening or closing statements infused the trial with unfairness and resulted in a denial of due process of law. The Court finds the CCA's decision neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Claim Three, therefore, will be denied for lack of merit.

**D.   Claim Four/Trial Court Allowed the Prosecution to Introduce Inadmissible Hearsay that Negated a Fact Essential to Applicant's Defense**

In Claim Four, Applicant asserts the trial court violated his due process rights when it allowed the prosecution to introduce inadmissible hearsay by a police officer, Michael Craft, that negated a fact essential to Applicant's defense.   ECF No. 1 at 25.   Applicant contends that in support of his defense theory, which was (1) he had an intimate relationship with R.S.; (2) he was engaged to her at one point; and (3) she allowed him to use her financial information to purchase the Nissan Maxima, Mr. McMann, testified on cross examination that the person listed on a vehicle's title must be the person who obtains the license plates from the Department of Motor Vehicles (DMV).   *Id.* at 26.   Applicant further contends that because the Maxima had license plates and R.S. was on the title it could be inferred that she obtained the plates from the DMV and knew she was the registered owner of the car.   *Id.*

Applicant asserts that the Officer Craft's testimony was inadmissible because it was irrelevant and immaterial as to when the State recovered the Maxima.   *Id.* at 28.   Applicant further asserts that the Officer Craft's statements were based on "out-of-court" information obtained from a computer database.   *Id.*   Applicant also asserts that the prosecution offered the statements for the truth of the matter that R.S. was the person who went to the DMV to obtain the license plates.   *Id.* at 29.   Finally, Applicant asserts that the prosecution did not meet its burden to establish that the hearsay was an exception and that the erroneous admission contributed to his conviction.   *Id.*

The Colorado CCA addressed Claim Four as follows:

At trial, the People presented testimony from the officer who recovered the stolen Nissan Maxima.   The prosecutor asked the officer:

In terms of your work with the car, did you attempt to run the plate to see if you could find any information about the plate that was on the vehicle?

[Officer]: Uh-huh, yes. Ran the plate number in our computer, and it came back no record found.

[Prosecutor]: What does that mean when something has no record found? If a license plate is registered through the Department of Motor Vehicles, will there be a record?

[Officer]: Uh-huh, yeah. It will list the owner, registered owner, and address, make, model, year, VIN number, and all that information would be provided. But if it comes back no record found it means the plate is either — it's usually a misuse of a plate, so it's not a registered plate. It could be a stolen plate, could be a stolen car.

Defense counsel objected and moved for a mistrial, arguing that the officer's testimony (1) evidenced a discovery violation; (2) constituted CRE 404(b) evidence; and (3) was inadmissible hearsay.

The prosecution responded,

This is the witness who recovered the vehicle. When no record was found on the plate, he then ran the VIN, and from the VIN he determined it was listed in the computer as a steal from Lakewood, and the car transferred back from Lakewood. This is the recovery of a stolen vehicle in our case, completely appropriate.

The trial court denied defendant's motion for a mistrial, ruling that "[w]e have information from the prior witness indicating that they — after they purchased the car, then they put out the indicat[o]r that it was stolen, so this is the recovery of the car."

The prosecution then ended direct examination of the officer by eliciting evidence that after no record of the license plate was found, he ran the VIN number, and "it linked back to a car reported stolen out of Lakewood." He explained that he then "complete[d] the paperwork, essentially, to impound the vehicle and have the case transferred to Lakewood."

## B. Standard of Review

We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Smalley*, 2015 COA 140, ¶ 18; *see also Manyik*, ¶ 65.

At trial, defendant objected to the officer's testimony on hearsay grounds. Accordingly, in the event the trial court erred, reversal is required unless the error was harmless. Crim. P. 52(a); *see also Smalley*, ¶ 19.

## C. Discussion

Based on our review of the record, we conclude that the officer's testimony was not hearsay.

"'Hearsay' is a statement other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted*." CRE 801(c) (emphasis added).

Here, contrary to defendant's assertion, the evidence was not offered to prove that the license plate on the Nissan Maxima was stolen. Rather, the statement — that no record was found — was offered to show its effect on the officer: because no record was found, the officer proceeded to run the car's VIN number, which indicated that the car was stolen. *See People v. Robinson*, 226 P.3d 1145, 1152 (Colo. App. 2009) (concluding that an informant's out-of-court statements were not hearsay because they were introduced to show "their effect on the listening officers, that is, to show why they chose to go to that particular location and stop, arrest, and search defendant and the car in which he was traveling"); *People v. J.M.*, 22 P.3d 545, 546-47 (Colo. App. 2000) (holding that an officer's testimony "that when he responded to the scene of the incident[,] the two [victims] . . . contacted him and gave their account of what had occurred" was not hearsay because it was offered "for the limited purpose of explaining" the officer's subsequent actions).

Nevertheless, defendant appears to contend that because the officer's testimony may have had the collateral effect of rebutting certain defense evidence, it was offered for the truth of the matter asserted. But that is not the proper inquiry; the proper inquiry is (1) the purpose for which the statements are offered (2) at the time they are offered. And based on our review of the record, we find "no indication that at the time the prosecutor elicited evidence of the [out-of-court] statement[ ], [s]he was doing so to prove the truth of the matter asserted therein." *Robinson*, 226 P.3d at 1152.

Even if the testimony was hearsay, we conclude that any error was harmless. Defendant was not driving the Nissan Maxima when the officer pulled it over, and the prosecutor did not elicit evidence connecting defendant to the driver. Accordingly, defendant's connection to the possibly stolen plate was too attenuated to have affected defendant's substantial rights. *See Hagos v.*

41

*People*, 2012 CO 63, ¶ 12 (noting that an error is harmless if it does not affect a defendant's substantial rights).

*Harlan*, No. 15CA0101, at 34-38; ECF No. 31-3 at 35-39.

As stated above by the Court in addressing Claim One, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence. *See McGuire*, 502 U.S. at 67-68. The question is whether, "considered in light of the entire record, its admission resulted in a fundamentally unfair trial." *Knighton*, 293 F.3d at 1171 (citing *McGuire*, 502 U.S. at 67-68)). Federal courts may only interfere with state evidentiary rulings when the rulings in question are "so unduly prejudicial that it renders the trial fundamentally unfair . . . ." *See Lott*, 705 F.3d at 1190 (quoting *Payne*, 501 U.S. at 825; *see also Tucker*, 883 F.2d at 881 (state court rulings on the admissibility of evidence are not questioned in federal habeas actions unless they "render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.") (internal quotations marks and citations omitted).

The colloquy that took place between the trial court and defense counsel regarding the hearsay issue is as follows:

> MR. BLOCH [defense counsel]: [T]he information she's eliciting about these plates is purely hearsay. This is all information that's coming from another unknown source, mainly, some kind of computerized Department of Motor Vehicle record. So what she's getting into is hearsay information that is also prejudicial. . . .
>
> The prejudice is just unbelievable now. She's basically saying that – alluding to that Mr. Harlan put misused plates on the car and then gave the car to somebody else by the name of Tillmon. This is all irrelevant and this all occurred well after the charged acts of this case, so she's getting things into the record now that occur after Mr. Harlan was in custody. I'm moving for a mistrial.
>
> MS. BLACK [prosecutor]: Your Honor, this is not a mistrial. This is not any sort of other bad act evidence. There's no inference that the defendant did anything. This is July of 2008. The charge in this case is motor vehicle

theft and that it was retained more than 24 hours.   This is showing that the vehicle was recovered in July of 2008.

Through checking the VIN number, they were able to determine that it was a stolen vehicle.   This does not relate to the defendant, because we do not have a witness to say that the car was in the defendant's possession at any time in July.   We don't have anybody to say how Mr. Tillmon got ahold of the vehicle, just that Mr. Tillmon had the vehicle and the plates did not match.

What I was going to do is follow up with this officer and ask if there are other reasons the plate would come back with no record found.   Based on what he told me prior to testifying, is that if a car is newly registered, frequently it will come back with not record found. If the plates have been expired and not renewed for a period of time, it may come back as no record found.

If there is any inference of bad character or bad act, it would be that zero - point traffic ticket committed by Mr. Tillmon, that is not something for the subject of a mistrial.   This is extremely appropriate.   This is the witness who recovered the vehicle.

When no record was found on the plate, he then ran the VIN, and from the VIN he determined it was listed in the computer as a steal from Lakewood, and the car transferred back from Lakewood.   This is the recovery of a stolen vehicle in our case, completely appropriate.
. . . .

THE COURT:   Okay. . . .   This is not 404(b).   This is not the defendant in this case.   This is Mr. Tillmon.   I'm taking the representation of the district attorney that she will present the fact that if a car is newly registered or if a license plate is not renewed, then it will not show up in motor vehicles.   But this is the way the car is recovered.

We have information from the prior witness indicating that they – after they purchased the car, then they put out the indicator that it was stolen, so this is recovery of the car.   Mr. Tillmon is driving.   No statements from Mr. Tillmon will come in.   I'll deny the motions for mistrial.   I'll permit the testimony.

Dec. 8, 2009 Trial Tr. at 160-63.

The record and the findings of the CCA support a finding that the testimony by Officer

Craft was not inadmissible hearsay.   It did not go to the truth of the matter, but it supported why

Officer Craft ran the VIN number when no record of the registration of the license plate was

found in the DMV computer base. Furthermore, considering R.S.'s and Mr. McMann's testimonies on cross examination, and the entire record, the trial clearly was not so fundamentally unfair as to constitute a denial of Applicant's federal constitutional rights. *Knighton*, 293 F.3d at 1171 (citing *McGuire*, 502 U.S. at 67-68).

Applicant, therefore, has failed to assert how the CCA's determinations were wrong or resulted in an unreasonable decision.

## E. Claim Five/Trial Court's Cumulative Errors Denied Applicant's Right to a Fair Trial

In Claim Five, Applicant asserts that the trial court's cumulative errors resulted in a denial of a fair trial. ECF No. 1 at 30. Applicant contends that it is was a "close case," and the jury relied on the credibility of R.S. *Id.* Applicant further contends that the trial court improperly allowed (1) evidence of his prior crimes; (2) the prosecution to improperly refer to him as a "conman;" and (3) the use of inadmissible hearsay. *Id.* Applicant concludes that even if the above errors were harmless when considered by themselves under the cumulative error doctrine in the aggregate the errors could result in an unfair trial. *Id.*

The Colorado CCA addressed Claim Five as follows:

> We conclude that the errors we have either found or assumed, taken individually or cumulatively, did not deprive defendant of a fair trial. *See People v. Wise*, 2014 COA 83, ¶ 31 ("As is often said, a defendant is entitled to a fair trial, not a perfect one.").

*Harlan*, No. 15CA0101 at 38; ECF No. 31-3 at 39.

The cumulative error doctrine applies only when there are two or more actual errors, and it does not apply to the accumulation of non-errors. *Castro v. Ward*, 138 F.3d 810, 832 (10th Cir. 1998). On federal habeas review, a cumulative error analysis applies only to cumulative constitutional errors. *Young v. Sirmons*, 551 F.3d 942, 972 (10th Cir. 2008). Since none of the

alleged errors Applicant identified above in Claims One through Four have been found to state a

constitutional error, the cumulative error claim will be dismissed for lack of merit.

## F. Claim Seven/Trial Court Precluded Defense Counsel from Contacting Jurors After Trial to Obtain Clearly Permissible Evidence Under Colo. R. Evid. 606(b)

In Claim Seven, Applicant asserts that, prior to sentencing, his trial attorney requested

that the court release the jurors contact information so that an investigation could be conducted

to determine if jury members overheard the prosecution's comments at the counsel table during

trial. ECF No. 1 at 32. Applicant contends that extraneous information was improperly before

the jury, which resulted in a reasonable possibility that Applicant was prejudiced. *Id.* at 33.

Applicant further asserts that under Colo. R. Evid. 606(b) juror testimony is allowed to

determine whether extraneous prejudicial information was before the jury during trial. *Id.* at 34.

Applicant also asserts that under Colorado state law the request was proper because (1) it was

clearly for a valid purpose; (2) none of the reasons relied on by the court supported the denial of

the request; and (3) Colorado law allows attorneys to contact and talk with jurors. *Id.*

The Colorado CCA addressed Claim Seven as follows:

> We review a trial court's denial of a party's request for juror contact information for an abuse of discretion. *See Golnick v. Callender*, 860 N.W.2d 180, 195-97 (Neb. 2015) (applying an abuse of discretion standard to the defendant's request for juror contact information); *see also People v. Carrasco*, 77 Cal. Rptr. 3d 912, 990 (Cal. Ct. App. 2008) (same).

> After trial, defense counsel filed a motion for a new trial. As relevant here, defense counsel contended that

>> [t]he physical set up of the Court room violated [defendant's] right to a fair trial. The prosecution sat within feet of the jury box. The two DA's were whispering during the entire trial. The Foreperson was a young girl who was sitting closer to the DA table th[a]n any other juror. [Defendant] has no way of knowing what type of improper comments the Foreperson may have overheard. Because of [the prosecutor]'s conduct prior to trial as documented

45

by the two attached reports from [a defense investigator] [,] [defendant] believes that the mere possibility that the jury could have overheard statements by the District Attorneys that are not part of the record constitutes a Due Process violation.

The attached documents summarized the defense investigator's interview with (1) F.S., an attorney who was not counsel in this case; and (2) J.C., an Adams County assistant district attorney who also was not involved in this case. The summary noted that one of the prosecutors in this case sent an e- mail to J.C. that said "I just wanted to let you know that [defendant]'s out.   Also, I have had one report from a prosecutor that he had a hit out on her a few years ago.   Be careful."   The summary indicated that neither F.S. nor J.C. thought the allegation was credible.

At the hearing on the motion for a new trial, defense counsel requested the jurors' contact information to determine if any "outside influence . . . might have affected their verdict."   The court instructed defense counsel that it would not release juror contact information without a motion and argument.   Defense counsel agreed to do so.

Moving to defense counsel's contention that a new trial was warranted based on the courtroom setup, the court found that [t]he two DAs were whispering during the entire trial.   I saw nothing that was improper in this case.   Throughout the entire case, both the prosecution and defense consulted with others during the course of it, and this certainly is a claim with no substance."

After the hearing, defense counsel submitted his motion for release of the jurors' contact information "to determine if there exists sufficient juror misconduct to justify a new trial."   Defense counsel repeated the grounds asserted in his motion for a new trial: "the defense believes that the jury may have been improperly influenced by conversations which were taking place during the trial between the two Deputy District Attorneys."

The trial court denied defendant's motion, noting that one of the fundamental purposes of CRE 606(b) is to "protect jurors from harassment and coercion."   Ultimately, the court concluded that it "ha[d] mere supposition in this case . . . and the courts tell us that jurors should be protected from this type of just blanket investigation of every verdict."   Thus, "[t]here [wa]s no reason to bring this forward.   This is simply interfering with the privacy of the jurors, which the Supreme Court tells this Court is paramount in our system of justice."

We discern no abuse of discretion by the trial court in denying defendant's motion.

As the court noted, one of the "fundamental" purposes of CRE 606(b) is to "protect jurors from harassment and coercion." *Stewart in Interest of Stewart v. Rice*, 47 P.3d 316, 322 (Colo. 2002).

Here, defendant's motion for release of juror contact information did not allege any specific extraneous information to which the jury may have been exposed. Rather, the motion speculated that the jury may have overheard conversations between the prosecutors. And although the defense investigator's summary of interviews with F.S. and J.C. were attached to the motion for a new trial, there was no representation that the jury overheard the prosecutor relate her earlier allegation that defendant put a "hit out" on another prosecutor.

Thus, in light of (1) CRE 606(b)'s fundamental purpose of protecting jurors from harassment and (2) the speculative nature of defendant's motion, we discern no abuse of discretion by the trial court in declining to release the jurors' contact information. *See Golnick*, 860 N.W.2d at 197 (noting that "federal courts routinely hold that absent a reasonable ground for investigating, a party cannot use posttrial interviews with jurors as a 'fishing expedition' to find some reason to attack a verdict"); *see also Stewart*, 47 P.3d at 321 (noting that CRE 606(b) is "[s]ubstantially similar to its federal counterpart").

*Harlan*, No. 15CA0101 at 40-44; ECF No. 31-3 at 41-45.

Upon review of the state court record, and based on the CCA's reasoning, the Court finds no basis for granting Claim Seven. First, Applicant has not demonstrated that trial counsel's request to contact the jurors post trial violated a specific constitutional right. Second, Applicant's claims are vague and conclusory. The trial court found that the claims were based on no more than a "supposition that there was extraneous contact or influence at all," and "jurors should be protected from this type of just blanket investigation of every verdict." May 14, 2010 Sentencing Hr'g at 130-31. A denial of a motion to interview jurors is proper when an attorney's basis for the interview is "vague" and of an "indefinite character". *United States v. Wilburn*,549 F.2d 734, 739 (10th Cir. 1977). Applicant fails to demonstrate with clear and convincing evidence that the denial of juror interviews denied him due process of law.

The record reflects that neither the trial court's decision not to allow the contact nor the CCA's decision were contrary to federal law or objectively unreasonable in light of the evidence presented in the state court proceedings. The denial of the request did not render Applicant's trial fundamentally unfair. Therefore, Applicant is not entitled to federal habeas relief in Claim Seven.

**G. Claim Eight/Denial of Jury Trial on Habitual Criminal Charges**

In Claim Eight, Applicant contends that pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004), "prior criminality should be submitted to a jury and proved beyond a reasonable doubt." ECF No. 1 at 35. Applicant further contends that in *Ring v. Arizona*, 536 U.S. 584 (2002), the Court found that certain aggravators must be proven beyond a reasonable doubt, including prior convictions. *Id.* at 36. Applicant concludes that because he was deprived of a jury to decide his sentence his federal constitutional right to due process was violated. *Id.*

The Colorado CCA addressed Claim Eight as follows:

"Generally, any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *People v. Moore*, 226 P.3d 1076, 1089 (Colo. App. 2009) (emphasis added) (citing *Blakely v. Washington*, 542 U.S. 296, 303 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Divisions of this court have previously rejected defendant's argument. *See, e.g., Moore*, 226 P.3d at 1090. We agree with the reasoning of those decisions and apply them here. Thus, defendant was not entitled to a jury trial on the habitual criminal counts. *Id.*

*Harlan*, No. 15CA0101 at 44-45; ECF No. 31-3 at 45-46.

The Supreme Court held in *Apprendi* that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The

48

U.S. Supreme Court in *Booker* reaffirmed the holding in *Apprendi* in finding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *See United States v. Booker*, 543 U.S. 220, 244 (2005).

Based on the above findings, Applicant's argument that *Ring* and *Blakely* have overruled *Apprendi* is incorrect. The Court finds no contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result in Claim Eight. Therefore, he fails to demonstrate the state court's decision in Claim Eight was contrary to clearly established law. *See House*, 527 F.3d at 1018.

Applicant also fails to demonstrate the state court's rejection of Claim Eight was an unreasonable application of clearly established federal law. Pursuant to § 2254(e)(1), the Court presumes that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence. He has not met this burden. The state court record confirms, *see* ECF No. 12-5 (State Court Docket in Case No. 2008CR1681) at 4-5, and as the Colorado Court of Appeals found, Applicant's sentence was aggravated based on his prior felony convictions. In light of these facts, the state court's legal conclusion that no *Apprendi* violation occurred is not an unreasonable application of clearly established federal law.

## IV.   CONCLUSION

In summary, the Court finds that Applicant is not entitled to relief on any of his remaining claims. Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 1, is denied and the case is dismissed with prejudice. It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). It is

**ORDERED** that leave to proceed in forma pauperis on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed in forma pauperis in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24. It is

**ORDERED** that Applicant's Request for an Evidentiary Hearing **(# 30)**, and the Motions for Appointment of Counsel, **(# 29, 33)**, are denied.

Dated this 19th day of February, 2019

           **BY THE COURT:**

           _Marcia S. Krieger_
           _____

           Marcia S. Krieger
           Chief United States District Judge